UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

Eastern District of Kentucky
F I L E D
SEP 0 7 2006
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 06-CV-161-KSF

DENNIS C. BURKETT                                         PLAINTIFF

VS:            **MEMORANDUM OPINION AND ORDER**

JOE W. BOOKER, JR., ET AL.                           DEFENDANTS

## INTRODUCTION

Plaintiff Dennis C. Burkett ("Burkett") is an inmate confined at the Federal Medical Center in Lexington, Kentucky. Proceeding *pro se*, he filed a civil rights complaint under 28 U.S.C. §1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) [Record No. 1]. The Court screens civil rights complaints pursuant to 28 U.S.C. §1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

## BACKGROUND

Plaintiff alleges that he is a paraplegic confined to a wheelchair. At 4:40 p.m. in the afternoon on August 29, 2004, Defendant Pfipps approached plaintiff in his cell in the Hospital

Care Unit ("HCU") and advised him that, pursuant to an order from Defendant Duron, Plaintiff was to be taken to the Segregation Housing Unit ("SHU") to stay there overnight prior to a medical appointment outside the prison the next day. Plaintiff explains that it is customary for inmates to stay the night in the SHU before such an outside appointment in order to assist them in complying with any medical prerequisites for the appointment, such as not consuming solid foods or liquids to facilitate medical testing.

Plaintiff explains that because he is confined to a wheelchair, emptying his bladder or bowels presents unique difficulties. Plaintiff must "self-catheter" to evacuate urine into a holding vessel. To evacuate feces, Plaintiff ordinarily uses a special raised toilet seat that permits him space to use his fingers to stimulate a bowel movement. Plaintiff alleges that because of these special needs he asked Pfipps for permission to use the restroom in the HCU prior to leaving for the SHU, but that Pfipps denied the request. Plaintiff reiterated this request again prior to being placed in the SHU cell, but it was again denied. Pfipps advised Plaintiff to create a list of any items he would need to accommodate his disability during his overnight stay.

Plaintiff was placed in the SHU cell at 5:30 p.m., and at some point thereafter was provided with some, but not all, of the items on the list he created and provided to SHU staff. Plaintiff indicates that because the cell lacked the special toilet facilities he required, although he was able to urinate into a cup, he could not empty his bowels. Plaintiff alleges that at some point prior to his departure from the cell at 11:30 a.m. the next morning, he defecated into his pants and was unable to clean up or change clothing for nearly 20 hours.

Plaintiff indicates that SHU staff retrieved him from his cell at 11:30 a.m. on August 30, 2004, and, upon realizing his condition, took him back to his regular cell to permit him to clean

up and change his clothing. Plaintiff alleges that because of the physical distress caused by being unable to empty his bowels for such an extended period, he defecated in his clothing again at some point during his outside medical appointment. Plaintiff alleges that he continued to feel considerable physical pain for several days, and that he continues to suffer from emotional pain and embarrassment to this day.

Shortly after these events, Plaintiff initiated the Bureau of Prisons' grievance process by filing a Form BP-9 on September 6, 2004, and pursued that process to its completion upon receiving a rejection from the BOP's National Office of Inmate Appeals on September 13, 2005. Plaintiff filed his complaint on May 22, 2006, alleging that the defendants violated his civil rights under the Eighth Amendment to the Constitution of the United States, the Americans with Disabilities Act, the Rehabilitation Act, and the Architectural Barriers Act. Plaintiff seeks monetary damages and injunctive relief.

## DISCUSSION

### 1. Architectural Barriers Act.

Plaintiff alleges that the defendants have violated the Architectural Barriers Act, 42 U.S.C. §4151 *et seq*. However, Plaintiff makes this allegation simply by referring to the Act, without making any factual allegations or legal arguments which would explain how the Act applies or was violated. Plaintiff's claim thereby fails to satisfy even the minimal pleading requirements of Federal Rule of Civil Procedure 8. Rule 8 requires merely a short and plain statement of the claim. Even applying the lowered pleading standard applicable to *pro se* plaintiffs under *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Plaintiff alleged no facts which would even suggest the application of the Act. This alone is sufficient ground for dismissing the

3

claim. *Harman v. Gist*, 2003 WL 22053591 (N.D. Ill. 2003) (unpublished disposition); *Owens v. Suter*, 2003 WL 942554 (S.D.N.Y. 2003) (unpublished disposition) (*pro se* claim that does not address core issue is dismissible *sua sponte* pursuant to Rule 8).

Even if this were not so, the only arguably-applicable section of the Act, 42 U.S.C. §4152, merely requires the Administrator of the General Services Administration to promulgate regulations for the design of buildings in a manner permitting disabled persons to use such buildings. Plaintiff has neither named the Administrator as a defendant in this action nor made any allegation that the Administrator has not promulgated such regulations. Nor is there any reason to conclude that, in the absence of an express private right of action set forth in the statute, one should be implied under the analysis set forth in *Cort v. Ash*, 422 U.S. 66, 78 (1975). Accordingly, the Court concludes that Plaintiff's claim, if any, under the Architectural Barriers Act fails as a matter of law and must be dismissed.

   2.   **Rehabilitation Act**

The plaintiff also asserts a claim under the Rehabilitation Act, contending that the defendants have violated the Act through their conduct in 2004 and by their continuing failure to provide conditions which meet the needs of disabled persons. Complaint at ¶¶67-69. Plaintiff acknowledges that even if he can establish a violation of the Act, he is only entitled to injunctive and declaratory relief. *See LaFaut v. Smith*, 834 F.2d 389 (4th Cir. 1987); *Robinson v. Runyon*, 987 F.Supp. 620, 623 (N.D.Ohio 1997).

To establish a violation of the Rehabilitation Act, a plaintiff must show that he or she (1) was a "handicapped person"; (2) was "otherwise qualified" to participate in the job or program; (3) was denied or excluded "solely by reason of her or his disability"; and that (4) the program

4

or activity received federal funds. *Burns v. City of Columbus, Ohio*, 91 F.3d 836, 841 (6th Cir. 1996).

Plaintiff's claim must fail because he has not alleged, let alone established, the third element of a cause of action: that his injury was caused "solely by reason of his or her disability." Plaintiff has confused his desire for better disability accommodations with the kind of claim for purposeful discrimination that the Rehabilitation Act prohibits. A Rehabilitation Act plaintiff "must allege... that they were discriminated against on the basis of their disability." *Andrews v. State of Ohio,* 104 F.3d 803, 807 (6th Cir. 1997); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 277-79 (2nd Cir. 2003) (ADA plaintiff must show that her exclusion from benefits occurred "by reason of such disability" by demonstrating that disability was a "substantial cause" of the exclusion). In the absence of a demonstrable nexus between the plaintiff's disability and the exclusion complained of, the plaintiff has failed to show proximate cause.

A claim that a prison has failed to adequately accommodate a disabled prisoner's condition is not a claim of purposeful discrimination under the Rehabilitation Act--if anything, it is a conditions of confinement claim under the Eighth Amendment. *Rashad v. Doughty*, 4 Fed.Appx. 558, 560, 2001 WL 68708, *1 (10th Cir. 2001) (unpublished disposition) (the ADA proscribes intentional discrimination, not the denial of adequate medical care); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners"; the statute "does not create a remedy for medical malpractice"); *McNally v. Prison Health Servs.*, 46 F.Supp.2d 49, 58 (D.Me. 1999) (noting distinction between "claims that the medical treatment received for a disability was inadequate

from claims that a prisoner has been denied access to services or programs because he is disabled."). Plaintiff's claim under the Rehabilitation Act therefore fails as a matter of law.

### 3. Americans with Disabilities Act

The plaintiff also asserts a claim under the Americans with Disabilities Act, 42 U.S.C. §12132. However, the ADA, like the Rehabilitation Act, prohibits only purposeful discrimination, not inadequate medical care or accommodation of a disability, *Bryant*, 84 F.3d at 249, and therefore Plaintiff has failed to state an ADA claim.

In addition, an ADA plaintiff must have been excluded from the activities of a "public entity." A "public entity" is defined as "(A) any State or local government; and (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government;..."). 42 U.S.C. §12131. Thus, while the ADA applies to state prisons, *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998), it does not apply to federal prisons or federal entities, *Crowder v. True*, 1993 WL 532455, *5 (N.D. Ill. 1993) (unpublished disposition), aff'd, 74 F.3d 812 (7th Cir. 1995), or to individuals, *Miller v. King*, 384 F.3d 1248, 1276 (11th Cir. 2004) ("the plain language of the statute applies only to public entities, and not to individuals. ... the natural meaning of §12132 is that liability extends only to public entities and not to persons in their individual capacities.")

### 4. Eighth Amendment

The plaintiff also asserts a claim under the Eighth Amendment, alleging that, in light of the fact that he is a paraplegic, the defendants' failure to provide him with a raised toilet seat during his 18-hour stay in the SHU constituted cruel and unusual punishment.

The Eighth Amendment to the Constitution of the United States prohibits "cruel and unusual punishments." In the prison context, administrators are required to provide medical care to inmates at a level sufficient to avoid violating this prohibition. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that "[i]n order to state a cognizable claim [under the Eighth Amendment] a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Id.* at 106.

This requirement has two components. The first component is objective and requires that the prisoner be complaining about medical needs that are sufficiently "serious" to implicate constitutional concerns. A medical need is sufficiently "serious" if the failure to treat the prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. The second component is subjective and requires the prisoner to demonstrate that prison officials acted with "deliberate indifference" to those needs, a knowing and culpable state of mind demonstrated by circumstances such as "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court explained that in order for a prison official to possess the required state of mind, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835; *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994). In other words, the prison official must actually know of a substantial risk to an inmate's health and knowingly fail to respond reasonably to that risk.

7

Using the foregoing standards, the Court concludes that the plaintiff cannot state an Eighth Amendment violation and his claim must be dismissed. First, the Court must determine whether the medical needs at issue here are sufficiently "serious" to implicate constitutional concerns. The needs at issue in this case are not Plaintiff's disabled status in general, nor even the need to have a bowel movement occur, which Plaintiff acknowledges did happen. The needs implicated by Plaintiff's claims are the need to be free from the pain and discomfort of being unable to stimulate a bowel movement notwithstanding the need for one to occur, and the need to be free from the discomfort and humiliation of having that bowel movement occur involuntarily in one's own clothing.

As to these matters, a medical need is sufficiently "serious" if the failure to treat the prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Without doubt, the plaintiff suffered pain and discomfort--the question is whether the severity of that pain warrants constitutional protection. The Court holds that while this delay and the resulting discomfort and embarrassment was unfortunate and perhaps unnecessary, it did not cause pain sufficiently serious to state an Eighth Amendment claim. *See Miller v. Michigan Dept. of Corrections Health Care Providers*, 986 F.Supp. 1078, 1081 (W.D.Mich. 1997) (inmate forced to wear urine- or feces-soaked clothing for several hours over three-day period while in administrative segregation failed to show sufficiently serious deprivation to state Eighth Amendment violation), *aff'd*, 173 F.3d 429 (6th Cir. 1999).

Even if Plaintiff could satisfy the first requirement, he cannot satisfy the second--that any of the defendants displayed *deliberate* indifference to his serious medical needs. Of all of the individuals named as defendants in this action, only one, Defendant Pfipps, had any personal

8

interaction with Plaintiff on the date in question. Plaintiff alleges that while Pfipps supplied him with a number of items that he requested to accommodate his disability, he did not provide him with the items he needed to self-catheter his urine or a raised toilet seat to evacuate his bowels. The fact that Pfipps provided Plaintiff with all but two of the items that Plaintiff requested firmly rebuts any inference that Pfipps was deliberately indifferent to Plaintiff's special needs as a paraplegic. *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) (prison need not respond to every request made by inmate for medical treatment). And the fact that Pfipps may or even should have provided these two missing items is not, of itself, sufficient to state an Eighth Amendment claim. So long as some medical accommodations were provided, there can be no deliberate indifference so long as the accommodations meet "minimal standards of adequacy." *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991); *see also Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."); *Birrell v. Brown*, 867 F.2d 956, 958 (6th Cir. 1989). The facts alleged by Plaintiff against Pfipps simply fail to indicate the kind of deliberate indifference to Plaintiff's needs for accommodation necessary to state a claim under the Eighth Amendment.

The Court further concludes that none of the remaining defendants was personally involved in the conduct of which Plaintiff complains. In order to recover against a given defendant in a civil rights action, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 Fed.Appx. 85, 86, 2003 WL 22905316, *1 (6th Cir. 2003) (unpublished disposition) (*citing Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). The requirement of personal involvement does not mean that the

particular defendant actually committed the conduct complained of, but it does require a supervisory official to have "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct." *Hays v. Jefferson County, Kentucky*, 668 F.2d 869, 874 (6th Cir. 1982). The mere fact of supervisory capacity is not enough: *respondeat superior* is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981); *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988), *aff'd*, 490 U.S. 319 (1989). At a minimum, the facts must support the allegation that the supervisor condoned the activity giving rise to a constitutional violation. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989). The evidence offered by the plaintiff must be sufficient to "justify an inference of personal involvement in the alleged deprivation of medical care." *Williams*, 837 F.2d at 308.

In an attempt to satisfy this requirement, the plaintiff has alleged that Defendants Booker, Dewalt, Growse, and Meko created the policy of putting inmates in the SHU before a doctor's visit and were aware of "the problem" but failed to correct it. Complaint at ¶¶48-50. This allegation fails to satisfy the personal involvement requirement, because Plaintiff does not assert that the mere fact of placing prisoners in the SHU prior to a medical visit caused the constitutional violation at issue here. Rather, Plaintiff complains that the harm complained of occurred because he was not given the items he needed to self-catheterize and a raised toilet seat. Plaintiff has not alleged that Defendants Booker, Dewalt, Growse, or Meko either created or were aware of a consistent policy of denying such items to disabled prisoners, and such an allegation would run counter to Pfipps' conduct in providing Plaintiff with some of the items he requested. Similarly, Defendant Duron was responsible only for signing the administrative order to place Plaintiff in

10

the SHU; Plaintiff does not allege Duron made any individualized decisions regarding Plaintiff's accommodations once he was placed in the cell.

Finally, Plaintiff contends Defendants Booker, DeWalt, White, and Watts are liable because they tried to "cover up" the problem in their responses to his BOP grievances. Complaint at ¶¶51-52. But it is well established that a prison official's participation in responding to an administrative remedy request does not create any causal connection to the issue grieved. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Because the plaintiff cannot show that any of these remaining individual defendants had any personal involvement in the conduct complained of, he has failed to state a claim with respect to them.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)  This action is **DISMISSED**, *sua sponte*, with prejudice.

(2)  Plaintiff's Motion for Issuance of a Preliminary Injunction [Record No. 2] is **DENIED as MOOT.**

(3)  The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. §1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

(4)  This is a **FINAL** and **APPEALABLE** order.

This the 7th day of September, 2006.

KARL S. FORESTER, SENIOR JUDGE